IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTHONY PALM,                          :
    Plaintiff                       :
                                    :
    v.                              :        CIV. NO. AMD 05-2170
                                    :
WAUSAU BENEFITS, INC., et al.,         :
    Defendants                      :

...o0o...

MEMORANDUM OPINION

Plaintiff Anthony Palm, a beneficiary under a group long term disability income policy sponsored by his former employer, brought this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et. seq.*, to challenge a denial of benefits. Discovery has concluded and the parties have filed cross-motions for summary judgment, which have been fully briefed. No hearing is needed. For the reasons set forth within, defendants' motion shall be granted and plaintiff's motion shall be denied. Moreover, as a matter of permissive fact-finding "on the papers" under the circumstances of this case, I find and conclude that Palm has failed to show by a preponderance of the evidence that Palm is "totally disabled" within the definition of the relevant policy and, consequently, he fails to satisfy his burden of proof. Accordingly, judgment shall be entered in favor of defendants.

I.

A.

Summary judgment is proper where the moving party demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A dispute is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A mere "scintilla of evidence" is not enough to frustrate a motion for summary judgment. Instead, the non-movant must project admissible evidence on which the finder of fact could reasonably find in favor of the non-movant. *Id.* at 322-23; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Cross-motions for summary judgment "do not automatically empower the court to dispense with the determination whether questions of material fact exist." *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir.), *cert. denied*, 464 U.S. 805 (1983). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987). Both motions may be denied. *See Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983).

B.

Notwithstanding the long-settled Rule 56 principles described above, as Judge Ellis's careful opinion explained in *Neumann v. Prudential Ins. Co. of Am.*, 367 F. Supp.2d 969, 979 (E.D.Va. 2005) (noting the permissibility of "a bench trial 'on the papers' with the district court acting as the finder of fact")(citation omitted), a hybrid form of fact-finding is available in some ERISA actions. The instant case, in which, as the parties agree, the court applies a *de novo* standard of review, is such a case. *See id.*

-2-

While ERISA is silent on the matter, the Supreme Court has established two alternative standards of review to be applied by a district court where a plaintiff challenges a benefits determination by a plan administrator (or that of the plan administrator's designee). *See generally Brodish v. Fed. Express Corp. Long Term Disability Plan*, 384 F. Supp. 2d 827, 831-32 (D. Md. 2005). In determining the appropriate standard, the court must first discern whether the plan language confers upon the plan administrator discretion to determine the claimant's eligibility for benefits. *Cf. Briggs v. Marriott Int'l, Inc.*, 368 F. Supp. 2d 461, 466 (D. Md. 2005)(granting summary judgment in favor of defendants under abuse of discretion standard in claim for denial of long term disability benefits), *aff'd*, 205 Fed.Appx. 183, 2006 WL 3419838 (4th Cir. 2006). Where the plan confers discretion, the court reviews the administrator's decision for abuse of discretion. *Id.* at 467 (citing *Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 522 (4th Cir. 2000)). Where no such authority exists, a *de novo* standard applies. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

On *de novo* review, the task of the district court is to "consider the issue of whether the plaintiff is entitled to disability benefits as if it had not been decided previously." *Neumann*, 367 F. Supp. 2d at 988 (citation and internal quotations omitted). It is clear that here, as is true generally under most disability policies, the plaintiff challenging a denial or termination of benefits bears the risk of non-persuasion, i.e., must satisfy the ultimate burden to prove total disability. *Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 276 (4th Cir. 2002);  *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 603 (4th Cir. 1999).

II.

Defendants assert that plaintiff fails, both as a matter of law and a matter of fact, to meet his burden of proving "total disability" under the terms of the policy.

A.

Palm was formerly employed as a salesman by International Paper Company. As a part of his employee benefits, he was a beneficiary under Group Long Term Disability Policy No. 0278 04 073965 ("the Policy") issued by Employers' Insurance of Wausau and, during the relevant period, administered by defendant Liberty Life Assurance Company of Boston ("Liberty Life"). Under the Policy, the terms "Total Disability" and "Totally Disabled" are defined as follows:

> during the elimination period and the next 24 months of disability the insured is (A) [u]nable to perform all of the material and substantial duties of the insured's occupation on a full-time basis because of a disability: (1) [c]aused by injury or sickness; and (2) [t]hat started while insured under this plan; and, (B) [a]fter 24 months of benefits have been paid, the insured is unable to perform with reasonable continuity all of the material and substantial duties of the insured's own *or any other occupation for which the insured is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity*.

Joint Stipulation, Exh. A (emphasis added). Thus, under the Policy, continued benefits (after two years) for total disability are payable only where a claimant's disability precludes employment in "any occupation," not simply in the claimant's occupation at the time of the onset of disability.

On August 29, 1995, at age 35, Palm was injured in a car accident and he suffered an exacerbation of a pre-existing back condition. In due course, he filed a long term disability

claim based upon lumbar pain and degenerative disc disease.  In April 1997, Palm was approved for "own occupation" benefits and began receiving same in September 1997. Two years later, in September 1999, Palm began receiving "any occupation" disability benefits under the Policy. At about that time, however, as responsibility for case management under the Policy was in transition, the claim file reflects that the outgoing case manager had developed skepticism over the validity of Palm's claim for "any occupation" benefits.

After three years of medical reviews and evaluations (briefly described, in part, below), during which Palm's benefits were ceased and then reinstated, Liberty Life concluded, in November 2003, that plaintiff was no longer "totally disabled" (if ever he was) but instead was capable of performing sedentary and/or light work. Palm was notified on or about December 19, 2003, of the termination decision. In January 2004, plaintiff, represented by counsel, formally requested a review of the decision. In February 2004, Liberty Life denied Palm's appeal. Several days later, plaintiff's counsel requested from Liberty Life a copy of plaintiff's claim file and additional time to submit further documentation in support of Palm's claim. Liberty Life obliged, delivered the claim file to counsel, and plaintiff submitted the additional documentation. On March 23, 2004, Liberty Life again denied plaintiff's appeal. Liberty Life notified Palm that his administrative right to review had been exhausted and that no further review would be conducted.

Nevertheless, on June 30, 2004, plaintiff (now represented by new counsel) again challenged the decision to deny "any occupation" disability benefits. In August 2004, again obliging plaintiff's request, Liberty Life forwarded a second copy of Palm's claim file to

counsel for plaintiff. In October 2004, plaintiff, through counsel, submitted a further "appeal letter along with various documentation" to Liberty Life. In January 2005, Liberty Life conducted a "second review of reconsideration" and, once again, rejected plaintiff's claim, reiterating its conclusion that Palm was not "totally disabled" from "any occupation."

B.

It is undisputed that Palm suffers from numerous impairments, including chronic lumbalgia, acute chronic lumbosacral paravertebral muscle spasm, bilaterally, and degenerative dessication with dorsal disc bulging at L4 - 5, L5 - S1 and C5 - 6, that are, collectively, disabling. However, the gist of Palm's assertion that the evidence is sufficient to establish that he is "totally disabled" from working in "any occupation" as of December 2003 rests on the opinion of plaintiff's treating physician, Dr. Richard Meyer. Dr. Meyer's rather conclusory opinion that Palm cannot perform sedentary or light duty work is wholly undercut by other evidence in th record, including surveillance videos of Palm engaged in physical activity that is inconsistent with Palm's claims, supported by his treating physician, that he is "totally disabled" within the meaning of the Policy.

In 2000, Palm underwent a Functional Capacity Evaluation ("FCE"), which indicated that plaintiff "would be capable of light work."  When Liberty Life sent the FCE report to Dr. Meyer and asked him to respond, Dr. Meyer stated he could not comment on the FCE because he had not seen Palm since 1999. Thereafter, in October 2000, Liberty Life denied Palm's claim for "any occupation" disability benefits, but it subsequently reinstated benefits pending further review.

During the period between 1997 and 2002, Palm apparently moved to Myrtle Beach, South Carolina, where he "tried to help promote" a bar in which he had made an $85,000 investment. The bar failed, Palm "lost everything" and moved back to the Washington, DC, area. In early 2002, Palm denied in a written questionnaire submitted to Liberty Life in support of his claim that he engaged in any of the following: "lawn care, shoveling, painting, repairs, etc." In fact, Palm is shown in surveillance videos engaging in physical activities in August 2002 and May 2003 which grievously undermine his representations in the questionnaire.

In 2002, Liberty Life requested additional information to support plaintiff's "total disability" claim. Dr. Meyer's progress notes indicated some improvement in Palm's condition; nonetheless, Dr. Meyer concluded that Palm remained "totally disabled." In March 2003, Liberty Life enlisted Dr. Steven Miszkiewicz, M.D., who reviewed plaintiff's file and concluded that plaintiff "would have a sedentary occupational capacity and perhaps a light, with a work-hardening program." Similarly, Dr. William Abraham, M.D., a board certified orthopedic surgeon, reviewed the file and concluded that Palm was "capable of working in a light duty capacity."

Palm's treating physician, Dr. Meyer, disagreed with Dr. Abraham's conclusion, whereupon the latter made several attempts to speak to Dr. Meyer by telephone. Dr. Meyer failed to respond to Dr. Abraham's calls. Accordingly, Dr. Abraham advised Liberty Life on August 28, 2003, that the "diagnostic findings on [Palm's] physical examination do not support [that] Palm [is] permanently totally unable to work . . . in a sedentary to light

capacity."

After receiving this second opinion (based on reviews of Palm's chart) that Palm was not "totally disabled," Liberty Life requested that plaintiff undergo an examination by a physician selected by Liberty Life. The examination took place in the home office of Dr. Sheldon Margulies, who is board certified in neurology. Dr. Margulies disagreed with Dr. Meyer's findings and concluded that there is "no objective reason for [Palm] not to return to full-time work without restriction." Dr. Meyer reviewed Dr. Margulies's report but continued to insist, by letter dated December 18, 2003, that his "findings [had] not changed" and that he still "consider[ed] [Palm] totally disabled."

On December 19, 2003, Liberty Life terminated plaintiff's "any occupation" disability benefits. Plaintiff appealed the decision and, in February 2004, Liberty Life enlisted a fourth consulting physician, Dr. Gale Brown, Jr., M.D., who also concluded that Palm "does not have physical impairment precluding him from performing sedentary-light work." On February 12, 2004, defendant denied plaintiff's appeal. Plaintiff's attorney then wrote to Liberty Life and enclosed a "vocational analysis" performed on Palm that was generally supportive of Palm's claim but which also observed that Palm was capable of "sedentary work demands for 4-hours per day."

III.

I have carefully considered the voluminous, conflicting evidence, including: (1) Palm's own descriptions of his subjective symptoms and limitations; (2) the opinions of his treating physicians and the bases for those opinions; (3) the opinions (and their bases) of the

four physicians retained by Liberty Life to review Palm's chart and, in one instance, to conduct an examination of Palm; (4) the evidence of FCEs; and (5) the video surveillance evidence. Moreover, I have carefully considered the myriad procedural and substantive attacks on Liberty Life's decision-making in denying "any occupation" disability benefits to Palm, including but not limited to: (1) Palm's assertions of bias and interest on the part of the physicians retained by Liberty Life (as well as Liberty Life's alleged financial motive to deny benefits); (2) the appropriate weight properly due to the opinion of a treating doctor; (3) Liberty Life's alleged failure to consider (or have its retained physicians consider) the medical file as a whole; (4) Liberty Life's alleged failure to deliver a copy of the 2003 surveillance video to Palm's first attorney; and (5) Dr. Margulies's credibility.

If the case is considered under the constraints of Rule 56, I have no hesitation in concluding that summary judgment in favor of defendants is entirely appropriate. While there may be disputes of subsidiary facts throughout the record, on the ultimate issue, whether Palm was "totally disabled" from working in "any occupation" within the meaning of the Policy, it is clear that no reasonable factfinder could answer that question in the affirmative, i.e., that no factfinder could find in favor of Palm by a preponderance of the evidence on the ultimate issue. *Cf. Briggs*, 368 F. Supp. 2d at 469-71 (concluding as a matter of law that Liberty Life did not abuse its discretion in denying long term disability benefits under ERISA where Liberty Life determined, in reliance on peer reviews of the plaintiff's chart, FCEs, and a physical examination of the plaintiff, and contrary to the opinion of the plaintiff's treating physician, that plaintiff was not "totally disabled" from impairments in

his back).

If, on the other hand, the case is treated as a "bench trial on the papers," I likewise have no hesitation in finding and concluding that Palm has not satisfied his burden of proof. Especially considering the surveillance evidence, which wholly undermines Palm's credibility as to his subjective symptoms during the critical 2002-2003 period, coupled with Dr. Meyer's heavy reliance on the subjective symptoms in forming his opinions on the issue of "totally disability," Palm's claim fails. At best, the evidence is in equipoise (it is not), and Palm simply fails to satisfy his burden to show "total disability" under the Policy.

IV.

For the reasons set forth, plaintiff's motion for summary judgment shall be denied, defendants' motion for summary judgment shall be granted, and judgment entered in favor of defendants against plaintiff. An Order follows.


Filed: March 26, 2007                                    _____/s/_____

                                                         Andre M. Davis
                                                         United States District Judge